# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CASE NO. 21-cr-696 |
| | : | |
| MICHAEL AARON CARICO | : | |

## SENTENCING MEMORANDUM

Michael Aaron Carico, by and through undersigned counsel, respectfully submits his Sentencing Memorandum for consideration by this Honorable Court. The sentencing hearing is scheduled to commence on March 11, 20202.

## INTRODUCTION

Mr. Michael Carico is 33 years old, born in 1988. Mr. Carico attended Hillsborough Community College in Tampa, Florida, earning his associate degree in Business Management and Marketing in 2008. Mr. Carico soon thereafter began his acting career, featuring in several films, TV series, and music videos. Mr. Carico has also worked as a freelance photographer since April of 2015 but has not continued work in this field since January 7, 2021. Mr. Carico has continued his acting career.[1]

## STATEMENT OF THE CASE

1. Mr. Carico decided to go to Washington D.C. at the request of his former agent, who was traveling to support the President of the United States with another actor. Mr. Carico traveled from California to Washington D.C. and stayed at a hotel with his former agent. Mr. Carico went to the Ellipse to see the President speak. There was a very large crowd at the rally, and he heard the President state that they were all moving to the Capitol. The

---

[1] *See* Ex. 1 for more information about Mr. Carico (Letter to the Court).

1

crowd started moving towards the Capitol, and Mr. Carico eventually made his way over to the Capitol building.

2. Mr. Carico is before the Court because he entered the Capitol on January 6, 2021. Although he entered the Capitol, he did not engage in any acts of violence, destruction, or vandalism. During his time in the Capitol building, Mr. Carico never saw anyone engage in acts of violence or destruction. The evidence produced in discovery shows Mr. Carico did not participate in, or even witness, any physical altercations with law enforcement or any other individual. Mr. Carico used a camera to capture events inside the Capitol and had his cellphone on his person. According to data derived from his cellphone, Mr. Carico entered the Capitol building through the Senate Wing Door at approximately 2:20 pm. He exited the Capitol building through the Rotunda Doors at approximately 3:12 pm.

3. On August 11, 2021, Mr. Carico's arrest warrant was executed in Burbank, California. At that time, Mr. Carico voluntarily interviewed with the Federal Bureau of Investigations ("FBI") Agents. Mr. Carico was brought before the US District Court for the Central District of California that same day and was released on his personal recognizance.

4. On August 18, 2021, Mr. Carico appeared before Magistrate Judge Robin M. Meriweather for an initial appearance and was released on his personal recognizance. Mr. Carico has been compliant with all conditions of pretrial release throughout.

5. On September 8, 2021, Mr. Carico again volunteered for an interview with FBI agents.

6. On December 21, 2021, *at the earliest opportunity to do so*, Mr. Carico plead guilty before this Honorable Court to Count 4 of the Indictment: Parading, Demonstrating, or Picketing in a Capitol Building, in violation of Title 40, United States Code, Section 5104(e)(2)(G).

# MEMORANDUM OF LAW

## I. Statutory Penalties

The defendant is to be sentenced on a single count of 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, the defendant faces up to six months of imprisonment and a fine of up to $5,000.00. As discussed below, the defendant must also pay restitution under the terms of his plea agreement. See 18 U.S.C. §3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply. 18 U.S.C. § 3559; U.S.S.G. § 1B1.9.

## II. Relevant 18 U.S.C. § 3553(a) Factors

18 U.S.C. § 3553(a) mandates that a court "impose a sentence sufficient, but not greater than necessary, to comply with" federal sentencing goals. In imposing a sentence that is "sufficient, but not greater than necessary," the Court should look to the statutory factors listed under Section 3553. Because this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply, and therefore § 3553(a)(4) and (5) are not discussed.

### A. § 3553(a)(1). The Nature and Circumstances of the Offense

What happened at the Capitol was horrible. There is no dispute here. The violence against Capitol Police officers, damaging the Capitol grounds, and invading one of the most sacred places of our Democracy, by many who wanted to overthrow a legal and valid election is horrible. Entering the Capitol was wrong, and Mr. Carico knows it was wrong. However, Mr. Carico did not see any violence or engage in any violence; did not break anything or break or remove any barrier; did not confront or fight with police; did not possess or carry any weapons; and did not post all over social media anything before, during, or after the event of January 6, 2021, unfolded. He did not enter any offices; did not enter the House or Senate floor; did not take any "souvenirs"

or engage in conduct exhibited on news accounts or in other Capitol riot cases. Mr. Carico was not affiliated with any organized or extremist group – *e.g.*, the Proud Boys, militiamen, white supremacists, anti-maskers, etc. – and was not wearing Make America Great Again ("MAGA") gear. He was unable to see the horrible events because of the position he was in by the Senate Wing Door and Rotunda Doors, nor did he see those events while on the media tower. Later in the day while in his hotel, he saw the news accounts of the day and was ashamed for being there.

Mr. Carico's intent for traveling to D.C. was to capture footage and images of the President speaking at the Ellipse. As a freelance photographer, in-between acting jobs due to COVID-19, Mr. Carico hoped he could sell the footage to news media. Mr. Carico, who thought with his wallet instead of his head that day, has come to regret his actions. His remorse and the horrors of that day that he first saw at his hotel room after the fact lead Mr. Carico to accept responsibility for his actions before this Honorable Court at the earliest opportunity. It is also why Mr. Carico volunteered to speak to FBI agents twice and provide them with anything they needed to further their investigation. Mr. Carico is extremely remorseful for getting carried away and entering the Capitol building, knowing he did not have permission.

### B. § 3553(a)(1). The History and Characteristics of Michael Carico

*i. Family Life*

Mr. Carico is a life-long resident of Florida, except for his time in California pursuing his acting career. His family also resides in Florida. Mr. Carico grew up in a middle-class home and had, and continues to have, a good relationship with his parents. As an only child, he was well provided for and grew up feeling loved and supported by his family, including his maternal grandparents. As a child, Mr. Carico had the opportunity to participate in many activities, including basketball, track, football, tennis, surfing, theatrical arts, set making, and acting, which

have allowed him to seek a career as the actor he has become today. There were no problems with alcohol or drug abuse in the home. Mr. Carico's parents are still married, and he sees them regularly. Mr. Carico's parents are very supportive, and both have attended every hearing in this case through the public line.

Mr. Carico is a devoted family man with the strong support of his entire family, significant other, and friends. Mr. Carico is not married but is in a relationship with his girlfriend, who is also very supportive. Mr. Carico's girlfriend has assisted Mr. Carico's move from California to Florida and has stayed with Mr. Carico in Florida until he was settled. Mr. Carico and his girlfriend are devoted to making their long-distance relationship work. She has also attended every hearing in this case through the public line.

### ii. Educational and Professional Background

Mr. Carico graduated from Blake High School in Tampa, Florida, in 2006 and attended Hillsborough Community College in Tampa, Florida, from 2006 to 2008, where he earned his associate degree in Business Management and Marketing. Mr. Carico is a trained actor professional photographer and has experience as a personal trainer and surfing instructor. Mr. Carico began his acting career in 2010 and became a freelance photographer in 2015. During the COVID-19 pandemic, his acting career halted, and Mr. Carico had to find part-time work in other fields to make a living while freelancing as a photographer. Since February 7, 2021, Mr. Carico has stopped freelance photography. Since moving back to Florida in August of 2021, Mr. Carico has obtained work through an agency to continue his acting career.

### iii. Medical Condition

Mr. Carico is in good health. He has never suffered from or been treated for any mental, emotional, physical, or substance abuse problems.

The PSR reports Mr. Carico's previous marijuana use on page 11, paragraph 49. This occasional use stopped completely before his arrest in this case.

   *iv. Criminal History*

Mr. Carico agrees with the Criminal History reflected in the PSR on pages 8 – 9, paragraphs 30 – 36, which only reflects minor traffic infractions. Mr. Carico has no criminal history and has been an exemplary citizen.

  **C. § 3553(a)(2). The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, to Provide Just Punishment for the Offense, and to Afford Adequate Deterrence to Criminal Conduct**

In considering this factor, it is important to distinguish between the aggregate conduct of all the protesters and the conduct of Mr. Carico. There was a wide variety of conduct that occurred on January 6, 2021, ranging from peaceful, non-criminal protest involving pure First-Amendment speech to acts of violence against police officers. The riot was a serious wrong; however, Mr. Carico's conduct consisted only of entering the Capitol building without permission and making a rude statement on the media tower. It is essential to the goals of sentencing that those who beat law enforcement officers, saw violence, came to the Capitol building to initiate violence and destruction, broke doors and windows, scaled the walls, and vandalized the Capitol be prosecuted and punished more harshly. As of March 2022, the Department of Justice has prosecuted or is prosecuting more than 770 defendants. It does not serve the goals of 18 U.S.C. § 3553(a) for the law to treat all the protesters alike, in effect punishing Mr. Carico for his actions and those who behaved violently.

By the time Mr. Carico is sentenced, he would have spent exactly seven (7) months on pretrial supervision, abiding by all conditions of his release on personal recognizance. Mr. Carico has agreed to pay $500 in restitution and the $10 special assessment fee and is prepared to do so

on the day of sentencing, or as the Court otherwise directs. As this is Mr. Carico's first and only criminal offense, a sentence of probation of not more than two (2) years would "reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense and afford adequate deterrence to criminal conduct." § 3553(a)(2).

### D. § 3553(a)(2). The Need for the Sentence Imposed to Protect the Public from Further Crimes by Mr. Carico

As this is Mr. Carico's first and only criminal offense, a probationary sentence would protect the public from any potential future crimes by Mr. Carico.[2] Nothing in his background indicates that he is likely to commit any criminal offenses in the future. Mr. Carico cooperated with FBI officers during his arrest and again on September 8, 2021. Mr. Carico further plead guilty at the earliest opportunity to do so, demonstrating his recognition of his culpability and remorse for his actions. Mr. Carico knows that his actions resulting in this prosecution have endangered his acting career – a job he loves – and thus is highly motivated to avoid such conduct in the future.

### E. § 3553(a)(2). The Need for the Sentence Imposed to Provide Mr. Carico with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner

As stated in the PSR on page 15, paragraph 78, Mr. Carico's history does not support the need for such services.

### F. § 3553(a)(3). The Kinds of Sentences Available

The maximum term of imprisonment is six (6) months for this Class B Misdemeanor. Pursuant to 18 USC § 19 and 3583(b)(3), this offense of conviction meets the definition of a "petty offense," consequently, a term of supervised release is not applicable. Pursuant to 18 USC § 3561(c)(2), Mr. Carico is eligible for up to five (5) years of probation. In addition to the mandatory

---

[2] *See also*, SENTENCING RECOMMENDATION, Docket Document 32 ("a probationary sentence would serve to protect the community and fulfill the goals of deterrence and punishment for the defendant.")

and discretionary conditions of supervision, 18 USC § 3563(a) and (b), the Court may impose other conditions as they relate to the nature and circumstances of the offense and the history and characteristics of Mr. Carico. 18 USC § 3553(a)(1). Pursuant to 18 USC § 3571(b), the maximum fine imposed is $5,000. Lastly, pursuant to 18 USC § 3663A, restitution in the total amount of $500 shall be ordered in this case.

> G. § 3553(a)(6). The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records who have been Found Guilty of Similar Conduct

The events of January 6, 2021, resulted in the prosecution of over 770 defendants for various offenses. With respect to those who plead guilty to Parading, Demonstrating, or Picketing in a Capitol Building, this Court has sentenced eighty-seven (87) individuals as of March 2022, where thirty-one (31) were sentenced to incarceration and fifty-six (56) were sentenced to a probationary period. Of the 56 sentenced to probation, the government recommended jail sentences for twenty-four (24) of them. Reviewing the cases in which a term of imprisonment was imposed, obvious facts distinguish them from Mr. Carico.[3] Mr. Carico has mitigating factors that warrant a probation sentence, like the other 56 out of 87 individuals sentenced to date for this offense. Sentencing Mr. Carico to a term of probation will avoid unwarranted sentence disparities.

---

[3] *See e.g.*: In 21-cr-165, Ms. Bissey showed no remorse for her actions and posted all over social media her lack of shame. In 21-cr-54, Mr. Mazzocco entered a conference room while in the Capitol and posted a selfie with the caption "The capital [sic] is ours!". In 21-cr-266, Ms. Miller climbed through a broken window to enter the Capitol. In 21-cr-41, Mr. Curzio was gathering in front of a police defensive line and refused to leave when ordered to do so. In 21-cr-71, Mr. Dresch posted all over social media, stating things like "those traitors Know who's really in charge." In 21-cr-49, Mr. Bauer and Hemenway witnessed violence against police. In 21-cr-166, Mr. Reeder walked into several rooms, hallways, and balconies and told officers to retreat. In 21-cr-50, Ms. Ryan posted all over social media after the events making statements like "We just stormed the Capit[o]l. it was one of the best days of my life." In 21-cr-112, Mr. Mish heard the fatal shooting of Ashli Babbitt. In 21-cr-243, Mr. Lolos climbed through a broken window to get into the building. In 21-cr-254, Mr. Scavo was at the front line where officers were pushed and assaulted before rioters breached into the building. In 21-cr-309, Mr. Peterson posted all over social media after the events and showed no remorse. In 21-cr-506, Mr. Ericson entered the United States House of Representatives Speaker's Conference Room and took a photograph of himself in the room and had someone photograph him seated with his feet on a conference table.

### H. § 3553(a)(7). The Need to Provide Restitution to any Victims of the Offense

The government and Mr. Williams have agreed that $500 restitution is appropriate in Mr. Williams' case. The government has requested $500 restitution in several cases related to January 6, 2021.

### III. Sentence Recommendation

The United States Probation Office ("USPO"), through Probation Officer Jessica Reichler, does not recommend a sentence of imprisonment.[4] The recommendations are for a term of probation only.[5] The government's recommendations are: 30 days incarceration, 3 years of probation, 60 hours of community service, and $500 in restitution.[6] The government's recommendation go against the USPO's recommendations and would result in "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." § 3553(a)(6). Reviewing the cases in which a term of imprisonment was not imposed despite the government's recommendations, there are obvious similarities to Mr. Carico[7] and/or clear additional mitigation factors supporting Mr. Carico's probationary sentence compared to the other defendants.[8]

---

[4] *See*, SENTENCING RECOMMENDATION, Docket Document 32.
[5] *Id.*
[6] *See*, Government's Sentencing Memorandum.
[7] *See e.g.,*: In 21-cr-391 Mr. Gruppo was sentenced to 3 months home detention and 24 months of probation despite the government's recommendation of 30 days of incarceration (Mr. Gruppo entered the building and did not see any violence). In 21-cr-43 Ms. Abual-Ragheb was sentenced to 2 months home detention and 36 months of probation despite the government's recommendation of 30 days of incarceration (Ms. Abual-Ragheb entered the building and did not see any violence). In 21-cr-45, Mr. Williams was sentenced to 24 months of probation despite the government's recommendation of 30 days of incarceration (Mr. Williams entered the building by climbing the exterior steps of the Capitol and did not see any violence).
[8] *See e.g.,*: In 21-cr-355, Ms. Lori was sentenced to 5 years of probation despite the government's recommendation of 30 days incarceration (Ms. Lori saw broken glass when she entered, the alarms were blaring when she entered, and she later told a local news outlet that her actions were "justified" and that she would "do this all over again tomorrow"). In 21-cr-204, Mr. Griffith was sentenced to 3 months home detention and 36 months of probation despite the government's recommendation of 3 months of incarceration (Mr. Griffith observed members of the crowd attacking law enforcement repeatedly before he entered the building). In 21-cr-344, Mr. Nelson was sentenced to 24 months of probation despite the government's recommendation of 14 days incarceration (Mr. Nelson noticed civilians on scaffoldings and police shooting pepper balls before entering the building). In 21-cr-94,

Accordingly, Mr. Carico respectfully requests that the Court sentence him to a term of probation not to exceed two (2) years and order payment of restitution in the amount of $500 with the mandatory $10 special assessment fee.

## **CONCLUSION**

Mr. Carico recognizes that he should not have been in the Capitol on January 6 and that he must be punished for that conduct. However, his behavior on that day does not deserve a prison sentence considering that he did not engage in violence or destruction of property, has been extremely cooperative, and has great remorse. His conduct should not result in incarceration and personal ruin.

Mr. Carico respectfully requests that after considering the § 3553(a) factors, the Court impose a sentence of probation and restitution. Considering the relevant case law and pursuant to 18 U.S.C. § 3553(a), such a sentence is sufficient but not greater than necessary.

Date: March 4, 2022

Respectfully submitted,

Camille Wagner
(DC Bar No. 1659390)

ROLLINS AND CHAN
419 7TH Street, NW
Suite 405
Washington, DC 20004
Office No. 202-455-5610
Direct No: 202-780-4918
Cell No.: 202-630-8812
Camille@rollinsandchan.com
*Counsel for Defendant Michael Carico*

---

Mr. Mariotto was sentenced to 36 months of probation despite the government's recommendations of 4 months of incarceration (Mr. Maritotto entered the Senate Chamber).

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 4th day of March, 2022, I caused a true and correct copy of the foregoing Defendant's Sentencing Memorandum to be delivered via ECF to the Parties in this matter.

/s/ Camille Wagner